1
2
3
4
5
6
7

Jeannine Yoo Sano (SBN 174190)
jsano@whitecase.com
Eric E. Lancaster (SBN 299994)
elancaster@whitecase.com
Kevin C. Menes (SBN 275046)
kmenes@whitecase.com
WHITE & CASE LLP
3000 El Camino Real
Five Palo Alto Square, 9th Floor
Palo Alto, CA  94306
Telephone: (650) 213-0324

8
9
10

Attorneys for Applicants Google Inc.,
Google Commerce Ltd.,
Google Germany GmbH, and
Google Ireland Ltd.

11
12
13

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>Google Inc.,<br>Google Commerce Ltd.,<br>Google Germany GmbH, and<br>Google Ireland Ltd.,<br><br>    Applicants for Order<br>Pursuant to 28 U.S.C. § 1782<br>Granting Leave To Obtain<br>Discovery for Use in Foreign<br>Proceedings. | Misc. No.  **'14CV2794 H      NLS**<br><br>*EX PARTE* APPLICATION FOR ORDER<br>PURSUANT TO 28 U.S.C. § 1782<br>GRANTING LEAVE TO OBTAIN<br>DISCOVERY FOR USE IN FOREIGN<br>PROCEEDINGS AND SUPPORTING<br>MEMORANDUM |

22
23
24
25
26
27
28

1
2

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................... 1

II.     SUMMARY ................................................................................................. 1

III.    BACKGROUND .......................................................................................... 2

IV.     ARGUMENT ............................................................................................... 4

        A.      Google's Application Satisfies All of the Statutory
                Requirements of 28 U.S.C. Section § 1782. ..................................... 4

        B.      The Supreme Court's *Intel* Factors Strongly Favor Granting
                Google's Application. ....................................................................... 5

                1.      Qualcomm, the Proposed Subpoena Respondent, Is Not a
                        Party to the Foreign Proceedings in Germany or in the
                        United Kingdom. ................................................................... 6

                2.      Google Seeks Highly Relevant Information That Will
                        Assist the Foreign Tribunals. ............................................... 7

                3.      No Foreign Discovery Restrictions Bar Google's
                        Requested Discovery. ........................................................... 9

                4.      Google's Proposed Discovery Is Narrowly Tailored To
                        Avoid Undue Burden on Qualcomm. .................................. 10

V.      CONCLUSION ......................................................................................... 10

i

1

**TABLE OF AUTHORITIES**

2

**Cases**

3   *Cryolife, Inc. v. Tenaxis Med., Inc.,*
    No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416, at *1 (N.D. Cal. Jan. 13,
4       2009)................................................................................................................5

*Four Pillars Enters. Co. v. Avery Dennison Corp.,*
5       308 F.3d 1075 (9th Cir. 2002)............................................................................6

*Heraeus Kulzer, GmbH v. Biomet, Inc.,*
6       633 F.3d 591 (7th Cir. 2011)..........................................................................8, 9

*In re Apple Inc.,*
7       No. MISC 12-80013 JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012)...8, 9

*In re Application of Guy,*
8       No. M19-96, 2004 WL 1857580, at *1 (S.D.N.Y. Aug. 19, 2004) ......................9

*In re Application of Ontario Principals' Council,*
9       No. 13-mc-120, 2013 WL 6844545, at *1 (E.D. Cal. Dec. 23, 2013) ...................1

*In re Application of Sarrio S.A. for Assistance Before Foreign Tribunals,*
10      173 F.R.D. 190 (S.D. Tex. 1995) ....................................................................5, 8

*In re Bayer AG,*
11      146 F.3d 188 (3d Cir. 1998)...............................................................................7

*In re Esses,*
12      101 F.3d 873 (2d Cir. 1996)...............................................................................9

*In re Ex Parte Application of Apple Inc., et al.,*
13      12-cv-179 LAB (MDD), slip op. (S.D. Cal. Feb. 28, 2012) ...............................4

*In re Ex Parte Application of Nokia Corp.,*
14      13-cv-2970 BEN (WMC), Slip Op. (S.D. Cal. Jan. 21, 2014) ...........................1

*In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour*
15      *Le Traitement du Mais,*
    No. 13-mc-0266, 2013 WL 6164435, at *1 (E.D. Pa. Nov. 22, 2013) .................5

*In re Ex Parte LG Elect. Deutschland GmbH,*
16      No. 12-cv-1197-LAB (MDD), 2012 WL 1836283, at *1 (S.D. Cal. May 21,
17      2012)................................................................................................................4

*In re Republic of Ecuador,*
18      No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *1 (N.D. Cal. Sept.
    15, 2010)..........................................................................................................1

*In re Roebers,*
19      No. C12-80145 MISC RS (LB), 2012 WL 2862122, at *1 (N.D. Cal July 11,
20      2012)................................................................................................................5

*Intel Corp. v. Advanced Micro Devices, Inc.,*
21      542 U.S. 241 (2004) ................................................................................passim

*Kulzer v. Esschem, Inc.,*
22      390 Fed. Appx. 88 (3d Cir. 2010) ......................................................................8

*London v. Does 1-4,*
23      279 Fed. Appx. 513 (9th Cir. 2008)....................................................................7

*Metallgesellschaft v. Hodapp,*
24      121 F.3d 77 (2d Cir. 1997)...............................................................................10

*Minatec Fin. v. SI Group Inc.,*
25      No. 1:08-CV-269, 2008 WL 3884374 at *1 (N.D.N.Y. 2008)............................8

*Valikhani v. Qualcomm Inc.,*
26      2009 WL 539915, at *1 (S.D. Cal. Mar. 3, 2009)...............................................2

**Statutes**
27  28 U.S.C. § 1782...............................................................................1, 2, 5, 10
    28 U.S.C. § 1782(a)........................................................................................4, 5

28

ii

## I.      INTRODUCTION

Google Inc., Google Commerce Ltd., Google Germany GmbH, and Google Ireland Ltd. (collectively "Google" or "Applicants") hereby apply to the Court *ex parte* for an order pursuant to 28 U.S.C. § 1782 granting leave to obtain targeted discovery from Qualcomm Inc. for use in two foreign proceedings pursuant to the accepted procedure in this district and in the Ninth Circuit.[1]  *See, e.g.*, *In re Ex Parte Application of Nokia Corp.*, 13-cv-2970 BEN (WMC), Slip Op. (S.D. Cal. Jan. 21, 2014) (granting *ex parte* Section 1782 application); *In re Application of Ontario Principals' Council*, No. 13-mc-120, 2013 WL 6844545, at *3 (E.D. Cal. Dec. 23, 2013) ("An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782."); *In re Republic of Ecuador,* No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) ("[I]t is common for the process of presenting the request to a court and to obtain the order authorizing discovery to be conducted *ex parte*. Such *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.").  This application is supported by the memorandum of points and authorities below and the Declaration of Eric Lancaster filed concurrently.  The subpoena to be served is attached to this Application as Exhibit A.  A copy of the proposed order is filed concurrently herewith.

## II.     SUMMARY

Unwired Planet LLC ("UP LLC"), a non-practicing patent holding entity, has accumulated a portfolio of worldwide patents and has sued companies around the world alleging infringement in order to generate income through litigation

---

[1]      Though Applicants have drafted non-burdensome document requests targeting specific documents, this *ex parte* application does not prejudice Qualcomm's rights to move to quash any such subpoena that the Court may order to be issued.

Ex Parte App. Pursuant to 28 U.S.C. § 1782

settlement and licensing.  In Germany and the United Kingdom, Unwired Planet International Limited ("UP Ltd.") has filed suit against Google Inc. and its European subsidiaries for patent infringement relating to features used in mobile phones.  The asserted patents were originally owned by Telefonaktiebolaget LM Ericsson ("Ericsson"), a company that made cell phones and had a series of patent cross licenses with various other cell phone manufacturers and distributors.  As such, these patents are likely subject to licensing commitments that provide Google with a license defense to the patent infringement actions in Germany and the United Kingdom.  Google therefore seeks to obtain from Qualcomm copies of all license agreements relating to these patents that Ericsson entered into with Qualcomm, a third-party chipset manufacturer, and documents discussing these licenses or referring to any of the patents-in-suit that are in the possession, custody, or control of Qualcomm.  Because these documents are directly relevant to disputed issues in the foreign proceedings, Google respectfully requests that the Court grant its Application to proceed with the subpoena to Qualcomm under 28 U.S.C. § 1782, which specifically authorizes such discovery.

## III.   BACKGROUND

On March 10, 2014, UP Ltd., a company incorporated under the laws of the Republic of Ireland, brought suit against Google and several other mobile device manufacturers in the Dusseldorf Regional Court in Germany and also in the High Court of Justice in London, United Kingdom, asserting infringement of six patents now owned by UP Ltd.  *See* Germany Statement of Claim, attached to the Lancaster Decl. as Ex. 1; United Kingdom Statement of Claim, attached to the Lancaster Decl. as Ex. 2.  Five of the asserted six patents-in-suit have been declared Standards Essential Patents essential to wireless communication standards ("Declared SEPs") which are subject to licensing commitments. *See, e.g.*, *Valikhani v. Qualcomm Inc.*, 2009 WL 539915, at *2 (S.D. Cal. Mar. 3, 2009) (explaining that many standards-setting organizations have adopted policies that "typically require that their

2

members declare whether they believe they hold patents necessary for compliance with a particular standard, and if so whether they are willing to license such patents on fair, reasonable, and non-discriminatory (FRAND) terms … before the [standards-setting organization] will agree to include the technology that depends upon those patents in any industry standard"). The Statement of Claim in the German proceeding was originally filed with the Dusseldorf Regional Court under docket number 4b O 24/14. The court recently decided to split the case into six separate proceedings according to the applicable patent-in-suit for each case. The relevant docket numbers for the five patents-in-suit declared to be standard essential now are 4b 0 96/14, 4b 0 97/14, 4b 0 98/14, 4b 0 99/14, and 4b 0 100/14. In the United Kingdom, the Statement of Claim was filed with the High Court of Justice under claim number HP 14 B01038, issued March 10, 2014. The court recently renumbered the case as HP-2014-000005, applicable as of October 1, 2014.

The five Declared SEPs were originally owned by Ericsson, whose headquarters are in Stockholm, Sweden. On January 10, 2013, Ericsson, Cluster LLC, Unwired Planet Inc. ("UP Inc."), UP LLC, Unwired Planet IP Holdings, Inc., and Unwired Planet IP Manager, LLC entered into a "Master Sale Agreement" whereby Ericsson would transfer 2,185 patents and patent applications to UP LLC, which included among them the Declared SEPs. *See* Redacted Master Sale Agreement, attached to the Lancaster Decl. as Ex. 3. The Declared SEPs were accordingly transferred to UP LLC, and UP LLC subsequently transferred them to UP Ltd., the plaintiff in the foreign proceedings. *See* Patent Assignment Agreement of Feb. 27, 2014 at 6-9, 12, 14, attached to the Lancaster Decl. as Ex. 9. A disputed issue in both the German and the United Kingdom proceedings concerns whether Google has a license "pass through" defense or an exhaustion defense against UP Ltd.'s allegations that Google infringes the five Declared SEPs based on licenses granted by Ericsson, including any licenses to Qualcomm and Intel,

3

manufacturers of chipsets that are used in the accused Google mobile devices.  *See, e.g.*, UK pleading affirmative defenses, attached to Lancaster Decl. as Ex. 5.

The materials Google seeks through its § 1782 application are directly relevant to Google's "pass through" and exhaustion defenses to UP Ltd.'s charges of infringement.  These license agreements and related documents concerning the Declared SEPs have not been produced to the German or English courts.  Since Qualcomm is likely in possession of copies of license agreements between Ericsson and Qualcomm, Google is seeking to obtain such documents through this Application and subpoena to Qualcomm.

## IV.   ARGUMENT

### A.   Google's Application Satisfies All of the Statutory Requirements of 28 U.S.C. Section § 1782.

Under 28 U.S.C. § 1782(a), a district court is authorized to grant a Section 1782 application when:  (1) the discovery is sought from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an interested person.  *See, In re Ex Parte Application of Apple Inc., et al.*, 12-cv-179 LAB (MDD), slip op. (S.D. Cal. Feb. 28, 2012) (granting *ex parte* Section 1782 application); *see also In re Ex Parte LG Elect. Deutschland GmbH*, No. 12-cv-1197-LAB (MDD), 2012 WL 1836283, at *3 (S.D. Cal. May 21, 2012) ("courts favor broad discovery generally [and] the Court will authorize the issuance of the requested subpoena [under § 1782]").

First, with its headquarters located at 5775 Morehouse Drive, San Diego, California  92121, the proposed subpoena respondent, Qualcomm, "resides or is found" in this district.  Second, the narrowly-tailored discovery sought from Qualcomm is for use in two proceedings before foreign tribunals, specifically for Google to use to support its defenses in patent infringement actions brought by UP Ltd. in the Dusseldorf Regional Court in Germany and in the High Court of Justice

4

in the United Kingdom.  There is no dispute that these courts qualify as "foreign tribunals" for purposes of Section 1782.  *See, e.g., Cryolife, Inc. v. Tenaxis Med., Inc.,* No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416, at *1, *5 (N.D. Cal. Jan. 13, 2009) (permitting discovery for use in patent infringement suit pending in "Dusseldorf Regional Court in Germany"); *In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour Le Traitement du Mais*, No. 13-mc-0266, 2013 WL 6164435, at *1 (E.D. Pa. Nov. 22, 2013) (permitting discovery to be used for proceeding in London High Court); *In re Application of Sarrio S.A. for Assistance Before Foreign Tribunals,* 173 F.R.D. 190, 199 (S.D. Tex. 1995) (permitting discovery for use in action brought before the House of Lords in the United Kingdom).[2]  Third, as a named party in foreign proceedings, Google qualifies as an "interested" party under 28 U.S.C. § 1782(a).  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) ("No doubt litigants are included among … the 'interested person[s]' who may invoke § 1782"); *In re Roebers*, No. C12-80145 MISC RS (LB), 2012 WL 2862122, at *2 (N.D. Cal July 11, 2012) ("there is no question that Ms. Roeber is an 'interested person' as she is a litigant in the proceeding").

Accordingly, Google meets all of the statutory requirements for this Application under 28 U.S.C. § 1782 to be granted.

**B.      The Supreme Court's *Intel* Factors Strongly Favor Granting Google's Application.**

The Supreme Court has articulated a number of non-exclusive factors to guide district courts with respect to evaluating Section 1782 applications, which

---

[2]      Courts have also granted Section 1782 applications requesting discovery for use in two separate foreign proceedings, as Google is seeking here.  *See In re Societe d'Etude*, 2013 WL 6164435, at *1 (permitting discovery to be used in criminal proceeding pending in France and an expected criminal proceeding in the United Kingdom); *In re Sarrio*, 173 F.R.D. 199 (permitting discovery to be used before courts in the United Kingdom and in Spain).

5

include (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." *See Intel*, 542 U.S. at 264 ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."). Google seeks a narrowly tailored set of specific documents that are highly relevant to the pending proceedings before the Dusseldorf Regional Court in Germany and the High Court of Justice in the United Kingdom.  Thus, as set forth more fully below, each of the *Intel* factors strongly favor the Court exercising its discretion to grant Google's Application.  *See Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) (affirming order granting Section 1782 application in part for discovery to be used in proceedings in China).

> **1.    Qualcomm, the Proposed Subpoena Respondent, Is Not a Party to the Foreign Proceedings in Germany or in the United Kingdom.**

The first *Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding."  *See Intel*, 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").  This factor arose out of the Supreme Court's concern that a party to foreign litigation would use Section 1782 to obtain discovery in the U.S. that it could have obtained from the foreign tribunal.  *See id.* (finding that "the need for § 1782(a) aid generally is not as apparent" when the party from whom discovery is sought is a party to the foreign proceeding because

6

"[a] foreign tribunal … can itself order them to produce evidence.").  Qualcomm is not a party to any of the foreign proceedings pending in Germany and the United Kingdom.  Thus, the Supreme Court's concern is not implicated, and this factor weighs in favor of granting Google's Application.

### 2.  Google Seeks Highly Relevant Information That Will Assist the Foreign Tribunals.

In evaluating Section 1782 applications, courts are advised to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *See Intel*, 542 U.S. at 247-49 (Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings.").  In light of industry practice, the five Declared SEPs at issue in the foreign patent infringement actions brought by UP Ltd. in Germany and in the United Kingdom were likely licensed by Ericsson to OEMs that manufacture mobile devices, including the accused Google mobile devices, or to third-party chipset manufacturers like Qualcomm whose chipsets are used in the accused Google mobile devices.  Thus, discovery regarding the license agreements between Ericsson and Qualcomm and the five Declared SEPs is critical to Google's license pass-through and exhaustion defenses.  *See London v. Does 1-4*, 279 Fed. Appx. 513, 515 (9th Cir. 2008) (affirming order granting 1782 discovery when proof sought was "critical" in light of the "nature and character of the foreign case"); *accord In re Bayer AG,* 146 F.3d 188, 195-96 (3d Cir. 1998) (documents relevant to foreign proceedings are "presumptively discoverable" under Section 1782).

Under similar facts, another district court in California refused to quash a subpoena issued pursuant to Section 1782 seeking discovery of license agreements relating to FRAND obligations to be used in German proceedings:

Ex Parte App. Pursuant to 28 U.S.C. § 1782

Upon review, the Court finds that Nokia has not met its burden of demonstrating that the German courts would be unreceptive to U.S. judicial assistance or that Apple's request is an attempt to circumvent German proof-gathering restrictions. Here, the evidence at issue consists of certain licenses and communications that are sought by Apple in order to show that Motorola violated an obligation to provide Apple a license on fair, reasonable and nondiscriminatory ("FRAND") terms. Specifically, Apple seeks to show that Motorola violated its FRAND obligation by entering into license agreements with Nokia, an Apple competitor, on terms more favorable than those it offered to Apple. Nokia presents no evidence to suggest that the German courts would disallow such evidence, once Apple has obtained it. Rather, Nokia contends only that German rules of procedure do not provide a mechanism for a party to obtain such evidence.

*See In re Apple Inc.*, No. MISC 12-80013 JW, 2012 WL 1570043, at *2 (N.D. Cal. May 2, 2012) ("in recognizing that '[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions' the Supreme Court anticipated situations such as these, and nonetheless found that the objectives of § 1782 compelled discovery"). Other courts have likewise recognized that German courts are receptive to using discovery obtained through Section 1782. *See, e.g.*, *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011) (authorizing Section 1782 discovery for use in German proceedings); *Kulzer v. Esschem, Inc.*, 390 Fed. Appx. 88, 93 (3d Cir. 2010) (recognizing receptiveness of German courts to use of discovery obtained through Section 1782); *Minatec Fin. v. SI Group Inc.*, No. 1:08-CV-269, 2008 WL 3884374 at *7 (N.D.N.Y. 2008) ("[W]e find neither any rejection nor offense taken by the German tribunals to a stateside discovery order."). The same logic applies to English courts. *See, e.g.*, *In re Sarrio*, 173 F.R.D. at 197 ("Hines Group has presented no authoritative proof that granting Sarrio's application would offend the English tribunal involved in the underlying litigation. In fact, ... a decision of England's highest judicial body, expressly approved a private litigant's use of section 1782 to gather evidence in the United States for use in English proceedings").

Accordingly, the second *Intel* factor supports granting Google's Application.

8

### 3.     No Foreign Discovery Restrictions Bar Google's Requested Discovery.

The reasoning by the court in *In re Apple* also demonstrates that another *Intel* discretionary factor, whether the discovery sought is an attempt to circumvent foreign discovery rules, also weighs in favor of granting Google's Section 1782 Application. *See, e.g.*, *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ("[O]nly upon authoritative proof that a foreign tribunal would **reject** evidence obtained with the aid of section 1782 should a district court refrain from granting the assistance offered by the act.") (emphasis in original).  Courts have routinely granted applications under Section 1782 to obtain evidence for use in these foreign tribunals. *See Heraeus Kulzer,* 633 F.3d at 597 ("Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures and there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence (German judges can disregard evidence that would waste the court's time), that the discovery produced."); *In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) (allowing discovery where court found no reason to suppose that the government of the United Kingdom would disfavor granting applicants relief under § 1782).  Thus, none of the discovery sought by Google would "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *See Intel*, 542 U.S. at 265.

As explained above, the information sought by Google's Section 1782 Application is relevant and would be useful to the foreign tribunals in Germany and the United Kingdom.  Absent compelling proof that the German and/or English courts would reject the discovery sought by Google from Qualcomm, this factor weighs heavily in Google's favor. *See Heraeus Kulzer,* 633 F.3d at 597 ("Once a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more

9

than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives."); *Metallgesellschaft v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997) ("Absent authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782 … a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect.").

Accordingly, the third *Intel* factor also weighs in favor of granting Google's *ex parte* application.

### 4. Google's Proposed Discovery Is Narrowly Tailored To Avoid Undue Burden on Qualcomm.

As shown by the proposed subpoena attached as Exhibit A, Google's proposed discovery requests are narrowly tailored to specific documents and will not impose any undue burden on Qualcomm since Google's subpoena is limited to a discrete set of documents, namely copies of license agreements between Qualcomm and Ericsson, along with documents describing those licenses and the Declared SEPs, that are in the possession, custody, or control of Qualcomm. Google plans to cooperate with Qualcomm to adjust dates and locations for production of the subpoenaed documents and to clarify scope to the extent necessary. Thus, the fourth *Intel* factor further weighs in favor of granting Google's Application.

## V. CONCLUSION

Because Google's request satisfies the three statutory requirements of 28 U.S.C. § 1782 and the *Intel* factors all weigh in favor of granting the Application, Google respectfully requests that this Court issue the proposed order authorizing Google to serve Qualcomm with the proposed subpoena in the form attached as Exhibit A.

Ex Parte App. Pursuant to 28 U.S.C. § 1782

1
2   DATED: November 21, 2014          Respectfully submitted,

3                                     WHITE & CASE LLP

4
5                                     By _/S/ Eric Lancaster_

6
7                                     Jeannine Yoo Sano (SBN 174190)
                                      jsano@whitecase.com
8                                     Eric E. Lancaster (SBN 244449)
                                      elancaster@whitecase.com
9                                     Kevin C. Menes (SBN 275046)
                                      kmenes@whitecase.com
10                                    White & Case LLP
11                                    3000 El Camino Real
                                      Five Palo Alto Square, 9th Floor
12                                    Palo Alto, CA 94306-2109
13                                    Telephone:  (650) 213-0324

14
15                                    Attorneys for Applicants Google Inc.,
                                      Google Commerce Ltd.,
16                                    Google Germany GmbH, and
                                      Google Ireland Ltd.
17
18
19
20
21
22
23
24
25
26
27
28

11

# <u>INDEX OF EXHIBITS</u>

1

2 <u>**Exhibit A**</u>**:**  Proposed Subpoena to Qualcomm                    Page 13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex Parte App. Pursuant to 28 U.S.C. § 1782

# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In re Ex Parte Application of Google | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         Qualcomm, Incorporated, 5775 Morehouse Drive, San Diego, CA 92121

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: White & Case LLP c/o Carmen Lo, 633 West Fifth Street Suit 1900, Los Angeles, CA 90071-2007 or some other mutually agreeable location | Date and Time: |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Eric E. Lancaster |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Google Inc., Google Commerce Ltd, Google Germany GmbH and Google Ireland Ltd , who issues or requests this subpoena, are:

Eric Lancaster,3000 El Camino Real 5 Palo Alto Sq, 9 Fl, Palo Alto CA 94306,elancaster@whitecase.com 650.213.0324

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                  _____
                                                         *Server's signature*

                                                      _____
                                                         *Printed name and title*

                                                      _____
                                                         *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

**Document Requests**

1.      Copies of all agreements, including any amendments or addendums thereto, conferring any license, sublicense, option, transfer, release, covenant not to sue, or any other rights regarding any patents that have been declared to be essential to the UMTS, GSM, and/or LTE standards, which Ericsson has negotiated and concluded with Qualcomm.

2.      All documents describing or referring to any of the agreements between Ericsson and Qualcomm, including any amendments or addendums thereto, regarding any patents that have been declared to be essential to the UMTS, GSM, and/or LTE standards requested in Document Request No. 1.

3.      All documents sent to or received from Samsung, HTC, Asus, Motorola, Lenovo, or LG regarding any pass-through rights to the Declared SEPs or any of the agreements between Qualcomm and Ericsson, including any amendments or addendums thereto, requested in Document Request No. 1.

4.      All documents sent to or received from Unwired Planet, Cluster LLC, or Ericsson regarding pass-through rights to the Declared SEPs or any of the license agreements between Qualcomm and Ericsson, including any amendments or addendums thereto, requested in Document Request No. 1.

**Definitions and Instructions**

1.      Each of the terms "Qualcomm," "You," and "Your" shall mean and refer to Qualcomm Incorporated and any subsidiaries, affiliates, predecessors, successors, or beneficiaries that are parties to or subject to any agreement, license, supplement, or addendum entered into with Ericsson.

2.      The term "Samsung" shall mean and refer to Samsung Electronics Co. Ltd. and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

3.      The term "HTC" shall mean and refer to HTC Corp. and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

4.      The term "Asus" shall mean and refer to Asus Computer International, Inc., and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

5.      The term "Motorola" shall mean and refer to Motorola, Inc., and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

6.      The term "Lenovo" shall mean and refer to Lenovo, Inc. and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

7.      The term "LG" shall mean and refer to LG Electronics U.S.A. Inc., and their respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

8.      The term "Unwired Planet" or "UP" shall mean and refer to Unwired Planet, LLC, Unwired Planet, Inc., Unwired Planet IP Holdings, Inc., Unwired Planet IP Manager, LLC, and their respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

9.      The term "Cluster LLC" shall mean and refer to Cluster, LLC and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

10.     The term "Ericsson" shall mean and refer to Telefonaktiebolaget LM Ericsson, and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

11.     The term "ETSI" shall mean and refer to The European Telecommunications Standards Institute and its respective officers, directors,

employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

12.     The term "GSM" means the Global System for Mobile communication ("GSM") standard, a "second generation" mobile communications technology standard developed and adopted by ETSI.

13.     The term "EMTS" means the Universal Mobile Telecommunications System ("UMTS") standard developed and adopted by ETSI which incorporates the Wide-band Code-Division Multiple Access ("W-CDMA") base technology and is commonly referred to as "third generation" or "3G" mobile technology.

14.     The term "LTE" means the Long Term Evolution Standard developed and adopted by ETSI (a successor technology to the UMTS technology), which is also known as "4G" or "4G LTE."

15.     The term "Declared SEP's" shall mean EP 2119 287 (declared essential for LTE); EP 2485 514 (declared essential for LTE), EP 2229 744 (declared essential for LTE), EP 1230 818 (declared essential for GSM/UMTS), and EP 1105 991 (declared essential for UMTS).

16.     The term "including" means including without limitation.

17.     The terms "regarding," "relating to," "referring to," or "concerning" mean, in whole or in part, constituting, containing, comprising, concerning, embodying, connected to, reflecting, describing, analyzing, showing, evidencing,

discussing, identifying, illustrating, stating, regarding, supporting, refuting, rebutting, relating to, referring to, responding to, commenting on, evaluating, about, in respect thereof, mentioning, dealing with, or in any way pertaining to, either explicitly or implicitly.

18.     "Document" is used in the most comprehensive and inclusive sense permitted by Fed. R. Civ. P. 34, as recently amended.

19.     The term "Person" means any natural person or any business, legal, or governmental entity or association.

20.     The terms "all" and "each" shall be construed as all and each.

21.     The terms "and" and "or" shall be construed in the conjunctive or disjunctive, whichever makes the request more inclusive.

22.     Grammar and syntax, as used in these Requests, shall be construed and interpreted to give proper meaning and consistency to their context.  By way of illustration, but not limitation, the singular form of words may include plural and the plural form of words may apply to each individual person and/or thing, and the use of any gender or tense may be construed to include all genders and tenses, wherever appropriate in these Requests, to bring within their scope any information that might otherwise be construed to be outside their scope.

23.     In the event that any document is to be withheld on the basis of a claim of privilege, that document is to be identified as follows: whether original or

draft, manner of recording or reproduction, addressor, addressee, author, indicated or blind copies, date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, present custodian, and nature of the privilege or reason for non-production asserted.

24.    Each Request should be construed independently.  No Request should be construed by reference to any other Requests for the purpose of limiting the scope of response to such Request.

# ATTACHMENT A

## Document Requests

1.      Copies of all agreements, including any amendments or addendums thereto, conferring any license, sublicense, option, transfer, release, covenant not to sue, or any other rights regarding any patents that have been declared to be essential to the UMTS, GSM, and/or LTE standards, which Ericsson has negotiated and concluded with Qualcomm.

2.      All documents describing or referring to any of the agreements between Ericsson and Qualcomm, including any amendments or addendums requested thereto, requested in Document Request No. 1, or any patents that have been declared to be essential to the UMTS, GSM, and/or LTE standards subject to any such agreement, amendment, or addendum.

3.      All documents sent to or received from Samsung, HTC, ASUS, Motorola, Lenovo, or LG regarding any pass-through rights to the Declared SEPs or any of the agreements between Qualcomm and Ericsson, including any amendments or addendums thereto, requested in Document Request No. 1.

4.      All documents sent to or received from Unwired Planet, Cluster LLC, or Ericsson regarding pass-through rights to the Declared SEPs or any of the license agreements between Qualcomm and Ericsson, including any amendments or addendums thereto, requested in Document Request No. 1.

**Definitions and Instructions**

1.      Each of the terms "Qualcomm," "You," and "Your" shall mean and refer to Qualcomm Inc. and any subsidiaries, affiliates, predecessors, successors, or beneficiaries that are parties to or subject to any agreement, license, supplement, or addendum entered into with Ericsson.

2.      The term "Samsung" shall mean and refer to Samsung Electronics Co. Ltd. and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

3.      The term "HTC" shall mean and refer to HTC Corp. and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

4.      The term "ASUS" shall mean and refer to ASUS Computer International, Inc., and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

5.      The term "Motorola" shall mean and refer to Motorola, Inc., and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

6.    The term "Lenovo" shall mean and refer to Lenovo, Inc. and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

7.    The term "LG" shall mean and refer to LG Electronics U.S.A. Inc., and their respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

8.    The term "Unwired Planet" or "UP" shall mean and refer to Unwired Planet, LLC, Unwired Planet, Inc., Unwired Planet IP Holdings, Inc., Unwired Planet IP Manager, LLC, and their respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

9.    The term "Cluster LLC" shall mean and refer to Cluster, LLC and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

10.    The term "Ericsson" shall mean and refer to Telefonaktiebolaget LM Ericsson, and its respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

11.    The term "ETSI" shall mean and refer to The European Telecommunications Standards Institute and its respective officers, directors,

employees, partners, corporate parents, subsidiaries, affiliates, predecessors, members of the board and agents.

12.     The term "GSM" means the Global System for Mobile communication ("GSM") standard, a "second generation" mobile communications technology standard developed and adopted by ETSI.

13.     The term "EMTS" means the Universal Mobile Telecommunications System ("UMTS") standard developed and adopted by ETSI which incorporates the Wide-band Code-Division Multiple Access ("W-CDMA") base technology and is commonly referred to as "third generation" or "3G" mobile technology.

14.     The term "LTE" means the Long Term Evolution Standard developed and adopted by ETSI (a successor technology to the UMTS technology), which is also known as "4G" or "4G LTE."

15.     The term "Declared SEP's" shall mean EP 2119 287 (declared essential for LTE); EP 2485 514 (declared essential for LTE), EP 2229 744 (declared essential for LTE), EP 1230 818 (declared essential for GSM/UMTS), and EP 1105 991 (declared essential for UMTS).

16.     The term "including" means including without limitation.

17.     The terms "regarding," "relating to," "referring to," or "concerning" mean, in whole or in part, constituting, containing, comprising, concerning, embodying, connected to, reflecting, describing, analyzing, showing, evidencing,

discussing, identifying, illustrating, stating, regarding, supporting, refuting, rebutting, relating to, referring to, responding to, commenting on, evaluating, about, in respect thereof, mentioning, dealing with, or in any way pertaining to, either explicitly or implicitly.

18.     "Document" is used in the most comprehensive and inclusive sense permitted by Fed. R. Civ. P. 34, as recently amended.

19.     The term "Person" means any natural person or any business, legal, or governmental entity or association.

20.     The terms "all" and "each" shall be construed as all and each.

21.     The terms "and" and "or" shall be construed in the conjunctive or disjunctive, whichever makes the request more inclusive.

22.     Grammar and syntax, as used in these Requests, shall be construed and interpreted to give proper meaning and consistency to their context.  By way of illustration, but not limitation, the singular form of words may include plural and the plural form of words may apply to each individual person and/or thing, and the use of any gender or tense may be construed to include all genders and tenses, wherever appropriate in these Requests, to bring within their scope any information that might otherwise be construed to be outside their scope.

23.     In the event that any document is to be withheld on the basis of a claim of privilege, that document is to be identified as follows: whether original or

draft, manner of recording or reproduction, addressor, addressee, author, indicated or blind copies, date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, present custodian, and nature of the privilege or reason for non-production asserted.

24.     Each Request should be construed independently.  No Request should be construed by reference to any other Requests for the purpose of limiting the scope of response to such Request.